61599. TUFTCO SALES CORPORATION v. GARRISON
CARPET MILLS, INC. et al.

BIRDSONG, Judge.

UCC — Financing Statement Priority. Garrison Carpet Mills, Inc. was a manufacturing business engaged in manufacturing carpets in Dalton. The appellee Walter E. Heller, Inc. is a factor who furnished financial assistance to Garrison for Garrison's operating expenses. Heller had made and continued to make financial advancements to Garrison in the form of loans before and after October, 1974. Heller held security arrangements from Garrison part of which applied to equipment owned at the time of the loans, as well as equipment thereafter acquired by Garrison. Prior to October, 1974, Heller had filed a financing statement covering Garrison's indebtedness to Heller. The appellant Tuftco Sales Corp. sold to Garrison a Model 162 tufting machine for the manufacture of carpeting. Tuftco took a note and security deed on the Model 162 for a purchase price of $48,920. Tuftco filed its own financing statement in October, 1974. Garrison made payments on the Model 162 tufting machine up until April, 1976. In April, 1976, Garrison purchased a Model 190 tufting machine. The price of this tufting machine was $129,207. By April, 1976, Garrison had reduced the indebtedness on the Model 162 to $27,608.73. Accordingly, Tuftco issued a new note and security deed in the amount of the purchase price for the Model 190 and added thereto the remaining indebtedness on the Model 162, the new note being in the amount of $156,815.73. Tuftco filed a new financing statement in May, 1976 (File No. 38898, dated May 3, 1976) expressly referring to the contract of July, 1974 covering the Model 162 but not specifically referring to the October, 1974 financing statement (File No. 34481) or specifying that financing statement no. 34481 continued in force. To the contrary, on that same day (May 3, 1976), Tuftco filed a cancellation of its financing statement no. 34481, dated October 3, 1974, relating to the promissory note for $48,920 as payment for the Model 162 tufting machine. It clearly was the intent of Tuftco and Garrison that the financing statement of May 3, 1976 cover both the remaining unpaid purchase price of the Model 162 from 1974 as well as the 1976 purchase of the Model 190 and that the $27,608.73 be carried over in the May 3, 1976 financing statement. Subsequently Garrison became

insolvent and could not meet its financial obligations. In April, 1978, Heller foreclosed on the security interests it held in Garrison's equipment, including the Model 162 tufting machine. Heller sold this tufting machine to appellee Phoenix Mills, Inc. Heller and Tuftco had earlier arrived at an agreement as to the secured rights in the Model 190 and that machine is not in issue in this case. The basic issue presented to the trial court was the priority of Heller's and Tuftco's security interests in the Model 162 tufting machine. The trial court found that Heller's financing statement had assumed priority over Tuftco's and granted summary judgment to Heller. It is this grant of summary judgment that forms the basis for this appeal.
*Held:*

Certain facts are not in dispute. This case is governed by Article 9 of the Uniform Commercial Code (UCC) (Code Ann. Ch. 109A-9 et seq.) The UCC provides that a "perfected" security interest takes priority over an "unperfected" one in the same collateral. Code Ann. §§ 109A-9—301 (1) (a) and 109A-9—312 (5). *Tri-County Livestock Auction Co. v. Bank of Madison,* 228 Ga. 325, 329 (185 SE2d 393). See *M. D. Hodges Enterprises v. First Ga. Bank,* 243 Ga. 664, 666 (256 SE2d 350). In this case, however, both parties are proceeding upon "perfected" security interests.

It is not disputed that Heller obtained the earliest filing date. Heller's financial statement was filed upon all equipment then owned or thereafter obtained by Garrison and this financial statement was filed at some date prior to October, 1974. Thus, the facts establish that when Tuftco sold the Model 162 to Garrison in 1974 and when Tuftco filed its financing statement in October, 1974 covering the Model 162, Heller had already established a filing date for its financing statement covering all after-obtained equipment by Garrison.

When competing security interests, in particular collateral, are all perfected by filing, the law provides that "priority between conflicting security interests in the same collateral shall be determined" in the order of filing. Code Ann. § 109A-9—312 (5) (a). If no further conflicts were apparent in the controversy, our decision would be simple. However, the UCC does not treat all security interests equally. For instance, Heller's interest in the Model 162 machine arises pursuant to the "after acquired property" clause in Heller's security agreement with Garrison. An after acquired property clause is expressly recognized by the UCC (Code Ann. § 109A-9—204 (3)). *Babson Credit Plan v. Cordele Prod. Credit Assn.,* 146 Ga. App. 266, 273 (246 SE2d 354).

Tuftco's perfected interest arose pursuant to another provision of the UCC. The parties do not disagree that Tuftco's financing

statement of October, 1974 was a "purchase money security interest." The parties have agreed for the purposes of this appeal that Tuftco filed its financing statement file no. 34481 on the Model 162 within ten days after Garrison received possession of the Model 162. Code Ann. § 109A-9—312 (4) states that a purchase money security interest filed within ten days of assumption of custody by the debtor establishes priority over conflicting security interests in the collateral, regardless of an earlier date of filing with respect to the competing interests. Thus as to priorities as of October, 1974, pertaining to the Model 162 machine, the parties recognized that in spite of Heller's earlier filed financing statement on after gained equipment, Tuftco's filing within ten days of acceptance of the machine by Garrison established Tuftco's priority. Subsequently, when Tuftco sold and delivered possession of the Model 190 machine in May, 1976, and filed its financing statement within ten days, Tuftco once again obtained priority over Heller's previously filed statement covering after gained equipment as pertained to the Model 190 machine. Inasmuch as Tuftco never removed that financing statement up until the time that Garrison went out of business, Tuftco retained its priority over the Model 190. Heller surrendered any claim in the Model 190 and that item of equipment, as previously indicated, is not in issue in this case.

The problem presented in this case arises out of the termination notice filed by Tuftco in relation to its financing statement no. 34481, dated October 3, 1974. Thus, on May 3, 1976, Tuftco terminated and removed from public record its financing statement no. 34481. It must be recalled that this was a purchase money security interest and was entitled to a special priority if properly filed. Thus by its act of cancellation, Tuftco removed from public record (and notice to all others) its purchase money security interest. On that same day, May 3, 1976, Tuftco filed a purchase money security interest financing statement in relation to the Model 190 tufting machine. As additional collateral but included in the May 3, 1976 financing statement, Tuftco identified and claimed the remaining indebtedness on the Model 162 machine. Thus in effect, Tuftco changed its security interest in the Model 162 from a perfected purchase money security interest (with special priority) to a perfected security interest which took rank in priority in accordance with its filing date. "In all cases not governed by other rules stated in this section (including cases of purchase money security interest which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined . . . (a) . . . according to priority in time of filing or perfection." Code Ann. § 109A-9—312 (5) (a). Inasmuch as Heller had

an earlier filed and dated financing statement on all after gained equipment predating both the October, 1974 and May, 1976 filing by Tuftco, as to the Model 162 machine, in May, 1976, the rank of priorities changed from Tuftco to one in favor of Heller. See Security Nat. Bank &c. Co. v. Dentsply Prof. Plan, 29 UCC Rep. Serv. 1686 (Okla. Sup. Ct. 1980).

Tuftco seeks to avoid the consequences of its termination of the October, 1974 financing statement (no. 34481) on May 3, 1976, by arguing that its simultaneous filing of statement no. 38898 (which incorporated the remaining indebtedness originally covered by the terminated financing statement of October, 1974) amounted to a continuation of the 1974 financing statement.

We reject this argument. Code Ann. § 109A-9—403 (3) requires a continuation statement to be filed within six months of the end of the five-year term authorized for the life of a financing statement. The continuation statement must identify the original statement by file number and affirmatively state that the original statement is still effective. In this case, Tuftco, in spite of adding the remaining indebtedness on the Model 162 to its May, 1976 statement, expressly cancelled its financing statement no. 34481 dated October 3, 1974. It did not identify file no. 34481 in its financing statement no. 38898, dated May 3, 1976 and did not expressly indicate therein that statement no. 34481 continued in existence. It is concluded therefore that Tuftco did not file a valid continuation of its October 3, 1974 financing statement no. 34481 by the filing of its statement no. 38898 dated May 3, 1976 because of its failure to comply with the statutory requisites of filing a continuation statement. See Eastern Indiana Production Credit Assn. v. Farmers State Bank, 11 UCC Rep. Serv. 664 (Ohio 1972). Moreover, Code Ann. § 109A-9—303 (2) has no applicability to this case. That statute in effect provides that if a security interest is perfected in any way and is later perfected some other way without hiatus in life, the interest will be presumed to have continued uninterrupted. However, financing statement no. 34481 pertained to an indebtedness of $48,920. That statement could have been continued by referring to the file number and stating that the indebtedness of $48,920 continued in existence for the period of five years or until satisfied. However, Tuftco terminated that financing statement. It then created an entirely new statement, no. 38898, in an entirely new amount of $156,815.73. By no reasonable stretch of the imagination could one conclude that the second statement (as distinguished from an unpaid balance) was a continuation of the first.

In a secondary argument, Tuftco argues that even if there was no valid continuation of its first statement covering the Model 162 machine, the principles of equity should intervene and prevail so that

Heller is not able to obtain benefits of financial security in collateral that was not in existence at the time it advanced money to Garrison. This argument likewise has been made before in other jurisdictions and rejected. "Although strict adherence to the Code requirements may at times lead to harsh results, efforts by courts to fashion equitable solutions for mitigation of hardships experienced by creditors in the literal application of statutory filing requirements may have the undesirable effect of reducing the degree of reliance the marketplace should be able to place on the Code provisions. The inevitable harm doubtless would be more serious to commerce than the occasional harshness from strict obedience." Security Nat. Bank &c. Co. v. Dentsply Prof. Plan, supra, p. 1689. See *United States v. Waterford No. 2 Office Center*, 246 Ga. 475 (271 SE2d 790). We are persuaded by and adopt the logic of that argument.

We conclude that by the termination of its purchase money security interest of October, 1974 and substitution therefor of a non-priority perfected statement dated May, 1976, Tuftco lost its priority in the Model 162 machine to the already established priority of Heller's earlier filed financing statement covering that same collateral. As between the two perfected statements, Heller's enjoyed first settlement. The trial court did not err in granting summary judgment to Heller and Garrison as to the complaint filed by Tuftco, nor in denying summary judgment to Tuftco.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED MAY 28, 1981.

*Richard P. Jahn, Jr., C. Lee Daniel III*, for appellant.
*James Bisson, Richard W. Bethea, Jr., Carl E. Hartley, Jan T. Hall*, for appellees.