## NORWICH SAVINGS SOCIETY *v.* INDEPENDENT BANK AND TRUST COMPANY

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE NO. CV-83-0072347
NEW LONDON

Memorandum filed September 28, 1983

*Brown, Jacobson, Jewett & Laudone,* for the plaintiff.
*Gaucher, Potter, Peters & Smith,* for the defendant.

HURLEY, J. The plaintiff, Norwich Savings Society (Norwich), and the defendant, Independent Bank and Trust Company (Independent), each loaned substantial sums of money to Premier Motors, Inc. (Premier). Both banks took a security interest in personal property owned by Premier consisting of, among other things, automobile parts. Premier ceased doing business on or about November 1, 1981. At the time of trial each party was still owed in excess of $100,000 by Premier.

It is not disputed that Independent had a first security interest on certain Chrysler parts and that Norwich had a second security interest, subject to Independent's security interest, on those same parts. Both Independent and Norwich perfected their security interests by filing a Uniform Commercial Code—1 financing statement with the secretary of the state. Independent's was filed on August 1, 1978, and Norwich's was filed on May 6, 1981. On October 8, 1981, Independent filed a Uniform Commercial Code—3 form with the secretary of the state releasing its security deposit in all Chrysler parts.

On November 4, 1981, Daniel Dennis, vice president of Norwich, met Donald Ladd, vice president of Independent, at the Premier premises and presented him with a letter indicating that Norwich now claimed a first security position in the Chrysler parts because Independent had released its position by its filing of October 8, 1981. It was then agreed that Independent would send the Chrysler parts back to Chrysler and that the proceeds would be held in escrow pending resolution of the dispute between the parties as to which had the prior security interest in the parts.

On April 3, 1982, Independent received a check from Chrysler in the amount of $28,899.55 representing payment for the parts in question. The funds were not placed in escrow but were held by Independent. Norwich then brought the present action, seeking recovery of that sum and claiming that by refusing to turn over those parts to Norwich, or the money realized on the sale to Chrysler, Independent had converted the same and was liable to Norwich for the sum paid by Chrysler.

The parties agree that the issue in the case is whether the Uniform Commercial Code—3 release filed on October 8, 1981, acted as a release of Independent's security interest in the parts and thus elevated Norwich's position from second priority to first priority as to those items. The defendant breaks this issue into two questions: (1) was the release of October 8, 1981, legally binding? and (2) is the security interest of the defendant prior in right to that of the plaintiff?

The defendant claims that its financing statement filed August 19, 1978, has priority over that of the plaintiff, filed May 6, 1981, if the release filed October 8, 1981, is deemed to be void. The defendant claims that generally a release requires consideration and that in this case there was no consideration for the release given by the defendant. Therefore the release should have no legal effect and is not binding. If the release is not binding the defendant's security interest remains prior in right to that of the plaintiff.

The court does not agree. Ladd testified that he knew that the Uniform Commercial Code—3 was a release and acted as a release of the security in question and with that knowledge forwarded it to the secretary of the state. Ladd further testified that the president of Premier told him that Premier was going out of the Chrysler line and that he desired to return the secured Chrysler parts for a refund. To do this he needed a

release from the bank. Since, in Ladd's opinion, the Premier account was current, he agreed to the release and did not require that the funds be used to pay off the account. Edwin P. Zaimoff, the president of Premier, testified that he needed the money, that he asked the bank for a release and that the bank agreed. Ladd was thus accommodating a customer who was not in default and was in good standing with the bank.

No conditions or arrangements were made with Norwich and nothing was done about its security interest. Thus it moved up from second to first in priority.

Independent's priority over Norwich with respect to its security interest in the parts continued until October 8, 1981, when, pursuant to General Statutes § 42a-9-406, Independent filed the Uniform Commercial Code—3 release. Section 42a-9-406 provides in relevant part: "A secured party of record may by his signed statement release all or a part of any collateral described in a filed financing statement." The filing of the Uniform Commercial Code—3 release resulted in Independent's having neither filing nor perfection with respect to its security interest in the parts. Norwich was thus elevated to first priority.

There were no cases cited in this jurisdiction that deal with the advancement in priority of a secured party upon the release of collateral by another secured party. Case law in other jurisdictions, however, clearly shows that a filed Uniform Commercial Code—3 release does result in a loss of priority between conflicting security interests in the same collateral.

When a security interest is removed from the public record, it loses the priority gained by filing as against other secured creditors with properly perfected security interests. *Security National Bank & Trust Co.* v. *Dentsply Professional Plan,* 29 U.C.C. Rep. 1686 (Okla.

1980); *Tuftco Sales Corporation* v. *Garrison Carpet Mills, Inc.,* 31 U.C.C. Rep. 1775, 158 Ga. App. 674 (1981).

The importance of market place reliance on the Uniform Commercial Code requires the literal application of statutory filing requirements and consequently the rejection of equitable arguments such as those asserted here by the defendant. In *Security National Bank & Trust Co.* v. *Dentsply Professional Plan,* supra, the court rejected the use of arguments based on equity, relying on strong policy considerations. The provisions of the Uniform Commercial Code must be strictly and literally applied.

"Although strict adherence to the Code requirements may at times lead to harsh results, efforts by courts to fashion equitable solutions for mitigation of hardships experienced by creditors in the literal application of statutory filing requirements may have the undesirable effect of reducing the degree of reliance the market place should be able to place on the Code provisions. The inevitable harm doubtless would be more serious to commerce than the occasional harshness from strict obedience." *Security National Bank & Trust Co.* v. *Dentsply Professional Plan,* supra, 1689.

General Statutes § 42a-9-306 (2) provides that a security interest continues in "any identifiable proceeds" from a disposition of collateral. Thus Norwich's filed financing statement covers the Chrysler parts, and the sums paid by Chrysler are clearly identifiable cash proceeds. This perfected security interest of Norwich has priority over any unperfected security interest in the cash proceeds, including any interest claimed by Independent.

The court therefore finds the issues for the plaintiff and orders Independent to deliver immediately to Norwich the sum of $28,899.55 plus interest thereon at the legal rate from April 3, 1982, the date that sum was received by Independent.