A90A0673. PACCAR FINANCIAL SERVICES, LTD. v.
JOHNSON.
(393 SE2d 685)

BIRDSONG, Judge.

This case involves a dispute between the holder of a purchase money security interest and an alleged good faith purchaser of a Kenworth truck.

Appellant/plaintiff brought suit for writ of possession. The trial court ultimately granted a directed verdict to appellee/defendant on the writ of possession claim. The directed verdict was reduced to judgment; appellant appeals this judgment.

On October 17, 1986, a Canadian corporation engaged in a long-haul freight business, known as Mid-Industries, purchased a new Kenworth truck from a Canadian truck dealer known as London Kenworth for $112,000 Canadian, plus certain financing and related charges making a deferred balance due of $136,652 Canadian. The purchase price would have been approximately $90,000 U. S. Appellant Paccar loaned the bulk of the purchase price to Mid-Industries, and to secure this indebtedness, Mid-Industries executed a conditional sales contract with London Kenworth which contained the security agreement in question and an assignment clause making appellant the assignee of London Kenworth's interest. The contract was executed and assigned to appellant on October 17, 1986.

In the meantime, a Georgia used truck broker named Murdock learned that Mid-Industries had a Kenworth truck for sale. He contacted agents of Mid-Industries who showed him the vehicle while it was still in the possession of London Kenworth. Later, on October 17, 1986, Murdock bought the truck from Mid-Industries at a motel in Detroit, Michigan, for $56,000 U. S. Murdock subsequently brought the truck to Georgia and sold it on October 22, 1986, to appellee Johnson, another Georgia used truck broker, for $61,000 U. S.

Prior to his purchase of the Kenworth truck, appellee Johnson had learned that Mid-Industries was going to have two trucks for sale. He flew to Detroit only to learn from Murdock that the latter had already purchased the one available truck, a Freightliner, and that Mid-Industries had not yet taken possession of the Kenworth. Johnson bought the Freightliner from Murdock and resold it at a profit.

Murdock subsequently called Johnson in Georgia and offered to sell him the Kenworth truck. Murdock gave appellee Johnson a bill of sale signed in blank by Mid-Industries agents either in Canada or in Detroit; the bill of sale was notarized in Georgia.

On October 24, 1986, within ten days of the original transaction, appellant Paccar filed its purchase money security interest in Ontario, Canada. *Held*:

1. The parties agree that the Personal Property Security, Revised Statutes of Ontario (Canada), 1980, Chapter 375 ("the Act") governs this case. See generally OCGA § 11-9-103 (3). The Act was introduced in evidence, and is contained in the trial record. The Act, although based on Article 9 of the United States Uniform Commercial Code prepared by the American Law Institute, does not follow it precisely. Report No. 3, Ontario Law Reform Commission on Personal Property Security Legislation, Dept. of the Attorney General, par. 5 (May 28, 1965).

2. Section 30 (1) of the Act (section 31 (1) of the draft act), which is patterned after UCC § 9-307 (1), provides that "[a] purchaser of goods from a seller who sells the goods in the ordinary course of business takes them free from any security interest therein given *by his seller* even though it is perfected and the purchaser actually knows of it." (Emphasis supplied.) The trial judge correctly ruled, inter alia, that as appellee Johnson's seller was Murdock, and as Murdock created no security interests in the truck, appellee is not entitled to avail himself of this provision whether under Georgia or Canadian law. Section 30 (1) on its face excludes protection for remote security interests, that is, it provides protection to the buyer in the ordinary course from a security interest created by the buyer's seller only and grants no protection against the security interest created by a former owner. Compare *Commercial Credit Equip. Corp. v. Bates*, 154 Ga. App. 71, 74 (I) (B) (267 SE2d 469); Anderson, 9 Uniform Commercial Code, Secured Transactions, § 9-307:8; see also 79 CJS, Secured Transactions, § 61.

3. The question then arises whether appellee was entitled to prevail under some other provision of Canadian law. Appellee asserts, inter alia, that the trial court reached the right result in its ruling because he is entitled to prevail under the provisions of section 22 (1) (b) of the Act. Section 22 (1) (b) (i) pertinently provides that: "*Except as provided in subsection (3)*, an unperfected security interest is subordinate to . . . the interest of a transferee who is not a secured party to the extent that he gives value without knowledge of the security interest and before it is perfected . . . of . . . goods . . . not in the ordinary course of the business of the transferor and where the transferee receives delivery of the collateral. . . ." (Emphasis supplied.)

At the outset, we note that appellant asserts that section 22 of the Act applies and it is entitled to claim the exception to section 22 (1) (b) found in subsection 22 (3).

Section 9-301 (2) of the UCC, the closest UCC counterpart to section 22 (3) of the Act, pertinently provides that "[i]f the secured party files with respect to a purchase money security interest before or within ten days after the debtor receives possession of the collateral [collateral comes into possession of the debtor], he takes *priority* over the rights of a *transferee in bulk or of a lien creditor* which arise between the time the security interest attaches and the time of filing." (Emphasis supplied.) Anderson, supra at § 9-301; Hawkland, 8 Uniform Commercial Code Series, § 9-301. The Official Code Comment to UCC section 9-301, interprets subsection (2) as follows: "*Except to the extent provided in subsection (2)*, this Article does not permit a secured party to file or take possession after another interest has received priority under subsection (1) and thereby protect himself against the intervening interest. . . . Subsection (2) gives a grace period for *perfection* by filing as to purchase money security interests only. . . . The grace period runs for ten days after the debtor receives possession of the collateral but operates to cut off only the interests of intervening lien creditors or bulk purchasers." Anderson, supra at § 9-301:1 (5), p. 24; Hawkland, supra at 9-301, pp. 577-578, 581-582. Accordingly, "[i]f the unperfected creditor has a purchase [money] security interest and files before or not later than the ten days after the debtor receives possession of the goods, he has *priority* over the rights of the bulk transferee that arose between the time when the security interest attached and the time of filing. Anderson, supra at § 9-301:50, p. 48. Thus, "[s]ubsection 9-301 (2) [UCC] . . . provides for a major exception to the rule of . . . subordination of an unperfected security interest. It sets out a 10-day grace period in which an unperfected security interest may nevertheless take over the rights of certain lien creditors and transferees in bulk." Hawkland, supra at § 9-301:01, p. 584. "Besides having a purchase money security interest in the collateral, a secured party, in order to qualify for the exception under subsection 9-301 (2), must file a financing statement with respect to the purchase money security interest before or within 10 days after the debtor receives possession of the collateral. . . . Thus, a secured party with a purchase money security interest has a 10-day grace period in which to perfect his security interest." Hawkland, supra § 9-301:05, p. 596. "Unlike a similar purchase money security interest exception in subsection 9-302 (1) (d) [UCC], the purchase money security interest exception under subsection 9-301 (2) does not need to be in any particular type of collateral. The collateral may, for example, be consumer goods or equipment or any other type of goods. . . ." Hawkland, supra, § 9-301:05, p. 596.

The exception found in subsection 9-301 (2) is a powerful exception because it allows a security interest, that in fact is not perfected until after an intervening property interest has arisen, to claim a priority over that intervening interest. Accordingly, both the UCC and the statutes of this state have limited the exception to an intervening "transferee in bulk or . . . lien creditor." Compare OCGA § 11-9-301.

Subsection 22 (3) of the Act, however, is broader than § 9-301 (2) of the UCC. Subsection 22 (3) expressly provides that "[a] purchase-money security interest that is registered before or within ten days after the debtor's possession of the collateral commences has *priority* over . . . transfers in bulk *or otherwise*, not in the ordinary course of business, occurring between the security interest's attaching and its being registered." (Emphasis supplied.) Thus, section 22 (3) extends its exception to all interim sales of goods made not in the ordinary course of business and not merely to those in bulk. Accordingly, *section 22 (3) of the Act is, clearly and unequivocally, on its face materially broader in scope than its counterpart found in section 9-301 (2) of the UCC.* Subsection 22 (3) being plain and susceptible of but one natural and reasonable construction, the courts of our state have no authority to place a different construction upon it merely because it does not mirror Georgia law, and the Canadian statute must be construed according to its terms. See *Ringewald v. Crawford W. Long Mem. Hosp.*, 258 Ga. 302, 303 (368 SE2d 490).

It was recognized that the Act would cause "a very substantial change in principle with reference to the time that priorities are established." Report No. 3 of the Ontario Law Reform Commission, supra at par. 22. Moreover, our interpretation is compatible with the basic provision of § 9 of the Act providing that "[e]xcept as otherwise provided by this or any other Act, a security agreement is effective according to its terms between the parties to it and against third parties."

Although the practical effect of section 22 (3) of the Act is to place a purchase money security interest holder who more likely will be a Canadian or frequently doing business in Canada in an advantageous position over an interim purchaser who may, as in this case, come from the United States, neither does the section 22 (3) preclude a foreign security interest holder from obtaining a priority over a Canadian third-party purchaser. Thus, we cannot say that such a legislative decision is violative of the public policy of this state. In either event, someone's interests are going to prevail, and the fact that it is the purchase money security interest holder, acting in apparent good faith, who is allowed to prevail over an unsuspecting interim purchaser, primarily is the result of the Ontario legislature weighing respective equities and balancing the need for fostering reliable business practices in their financial community. Accordingly, we have no

basis for refusing to apply section 22 (3) of the Act on public policy grounds.

It is uncontroverted in this case that appellant did file the required financial statement within the ten-day period. Neither appellant nor appellee has brought to this court's attention any Canadian case law dealing with a situation where a purchase money security interest for the sale of inventory goods was registered within the ten-day period. We conclude that such filing would allow appellant to rely upon the benefits of section 22 (3) of the Act, but only if the transfer did *not* occur in the ordinary course of business.

As to the issue of whether a transfer has occurred in the ordinary course of business, section 22 of the Act appears to adopt the basic requirements of the UCC. For a sale or transfer to be classified as occurring in the ordinary course of business the seller is required to be "in the business of selling goods of that kind." See Anderson, supra at § 9-307:25, p. 204. The seller must deal in goods of that kind and "the buyer's belief is immaterial on this issue, although it is relevant to the question of the buyer's good faith and therefore has bearing on whether the buyer purchased in ordinary course." Id. at p. 205; see generally 79 CJS, Secured Transactions, § 62.

In the case sub judice, we have a so-called "string transaction." At least one authority on Canadian security law has concluded that "the Act does not take account of string transactions. . . . It is drafted upon an assumption of a single transfer." McLaren, Secured Transactions & Personal Property in Canada, § 6.02 [2] [b], p. 6-26. McLaren proceeds to suggest at least two alternative methods of interpreting string transactions so that the Act can be satisfactorily applied. Id. One of those methods, which we now partially adopt as being the only one suited to the facts of this case, is to apply the Act to the first transfer transaction between Mid-Industries and Murdock, then treating that result as setting the characterization for the subsequent transfer transaction between Murdock and Johnson. Accordingly, we conclude that the question of whether the sale in question was accomplished *in the ordinary course of business*, is dependent upon the characterization given to the initial transfer to Murdock after the provisions of the Act have been applied thereto.

During the course of the trial, the court ruled, without subsequent retraction thereof, "that the [appellee]/defendant [Johnson] was a buyer in the ordinary course of business as defined either under Georgia law or Canadian law." The trial court expressly stated its "finding" was made "as a matter of law." We find that the trial court erred in so interpreting the applicable Canadian law. "When there is a question of fact as to whether the seller was a dealer in goods of the kind in question at the time of the sale there is an issue of fact as to whether the buyer is a buyer in ordinary course of business. . . ."

Anderson, supra at § 9-307:23, p. 202. In the case sub judice, we find that a jury question did exist as to whether Mid-Industries was a dealer in goods of the kind in question at the time of the sale, and as it is the first transfer transaction that characterizes the string transaction, *as to this particular element*, the trial court erred in its ruling.

Assuming arguendo, that the transaction in this case was accomplished in the ordinary course of business, then the powerful exception contained in section 22 (3) of the Act would provide appellant no protection, and as to appellee Johnson the security interest would remain unperfected as of the time of the sale. For reasons above discussed, the appellee would not be entitled to rely upon section 30 (1) of the Act. The question then becomes whether appellee Johnson, if he qualifies as a good faith purchaser, could prevail over appellant's unperfected security interest notwithstanding the inapplicability of section 30 (1).

It is asserted, that the Act does not adequately address such situation, thus causing a situation where the first good faith purchaser in a string transaction would be able to claim the benefits of section 30 (1) of the Act, but that subsequent good faith purchasers could not. The trial judge in essence recognized this anomaly and concluded that if section 22 (1) (b) of the Act (subject as we have now said to section 22 (3)) provides benefits to such string purchasers where the sale is not in the ordinary course of business, "then certainly [the same protection] would be given to [string purchasers] who purchased in the ordinary course of business." With this conclusion of the trial judge we cannot agree. Section 9 of the Act expressly provides that, "[e]xcept as otherwise provided by this or any other Act, a *security agreement* is effective according to its *terms* between the parties to it *and against third parties*." (Emphasis supplied.) Thus, as the Act is silent in such cases, appellee would be unable to prevail as the conditional sales contract in the case sub judice constituted a valid security agreement within the meaning of section 9 of the Act. See, e.g., section 1 (x) of the Act.

We recognize that this interpretation is harsh as to a good faith string purchaser. But it is better to have an occasional "harsh application of the law than to disrupt thousands of other transactions by injecting uncertainty and by encouraging . . . challenge [to] what would otherwise be clear and fair rules." White & Summers, 2 Uniform Commercial Code (3d ed.), Weird Cases, § 26-20; compare *Tuftco Sales Corp. v. Garrison Carpet Mills*, 158 Ga. App. 674, 678 (282 SE2d 159).

As it appears that appellee Johnson would not be entitled to prevail under any circumstances, judgment is reversed and the case remanded to the trial court for appropriate disposition consistent with this opinion.

*Judgment reversed and case remanded with direction. Banke, P. J., and Cooper, J., concur.*

DECIDED APRIL 2, 1990 —
REHEARING DENIED APRIL 19, 1990 —

*James H. Phillips, McCamy, Phillips, Tuggle & Rollins, R. Kevin Silvey,* for appellant.
*James A. Meaney III,* for appellee.