A89A2158, A89A2159. CITY OF LAWRENCEVILLE v. HEARD et al.; and vice versa.

(391 SE2d 441)

SOGNIER, Judge.

Charles and Frances Heard brought suit against the City of Lawrenceville on a claim of continuing nuisance, alleging damage to their property resulting from excessive surface water runoff. The jury returned a verdict of $29,000 in damages and $10,000 in attorney fees against the City. Upon the City's motions for new trial and for judgment n.o.v., the trial court granted the j.n.o.v. motion with respect to the award of attorney fees and entered judgment for $29,000. Both parties appeal.

Construed to support the jury's verdict, the evidence adduced at trial disclosed that in August 1970, the Heards moved into their newly constructed house on Brandy Creek Circle in unit seven of the Forest Hills subdivision in Gwinnett County. At the time of their purchase, the area north of and behind their home, which sloped uphill from their lot, was wooded and undeveloped, as was the property to the east. A creek ran in a westerly direction through the front yard approximately sixty feet from the house. On the east side of their house, the Heards constructed a gravel turnaround for their driveway and a dam and pond in the creek. They also added a garden in the back northeast corner of the property. In the mid-1970s, unit ten of the Forest Hills development was built to the east of the Heards' home, and the subdivision of Windsor Farms was developed to the north. The surface water drainage facilities for Windsor Farms included a catch basin on Windsor Court, the street north of the Windsor Farms lots abutting the rear of the Heards' property, with a culvert running through those lots to a point of discharge approximately 140 feet north of the Heards' rear property line. The drainage system for units seven and ten of Forest Hills included catch basins and storm drain culverts to the east of the Heards' house on Summit Ridge Road and Brandy Creek Circle. After completion of these projects, the drainage structures, easements, and streets were dedicated to and maintained by the City.

Mr. Heard testified that they began having increased surface water runoff in the mid-1970s, with water flowing onto their property from the Windsor Farms property north of the house and also coming down the creek from Forest Hills and over their dam at a greatly increased volume and velocity. He stated that as a result their garden topsoil washed into the pond, the gravel in the turnaround was displaced during heavy rains, and the dam and pond continued to widen and erode despite his attempts to reinforce the dam. Heard testified

that he first noticed water in his basement in 1978, and that despite the installation of two sump pumps the basement still floods whenever a heavy rain causes the creek to fill. Heard also stated that his house has developed warped, uneven floors and numerous cracks in the masonry chimney and foundation since the drainage problems began.

Both parties presented testimony from engineers concerning the source of the surface water and its effect on the Heards' yard and house. Thomas Moore, the Heards' civil and structural engineer, stated he concluded from his inspection of the site and analysis of the relevant drainage basin that the masonry cracks resulted from settlement due to saturated subsurface soils and that the damage to the floors was attributable either to this settlement or to moisture in the basement. Moore concluded that the drainage problems were a result of improper design of the storm water drainage system for Windsor Farms in that there were no detention ponds, and inadequate maintenance of the drainage structures by the City. Specifically, he testified that the catch basins at Summit Ridge Road and Brandy Creek Circle upstream from the Heards' property were clogged with debris, and that as a result water ran over the catch basins and directly onto the Heards' property, where it flowed down the front yard into the creek. Moore opined that to remedy the problem, the Heards would have to conduct a hydrology study, construct a detention pond in place of the dam, reinforce the creek banks, run a flume from the Windsor Farms culvert to the detention pond, repair or replace the drainage structure at Brandy Creek Circle, and repair the structural damage to the house. John Mobley, a construction contractor, estimated that this work would cost $48,000. The Heards also presented the deposition testimony of Don Martin, the City's Superintendent of Utilities, who stated that the City had approved the plans for each subdivision at issue and opined that any increase in surface water drainage was attributable to the development of the area in general rather than to the design of the drainage for the subdivisions.

James Aton, the civil and environmental engineer who testified for the City, concluded from his hydrology study of the drainage basin that the drainage system installed by the subdivision developers did not divert the surface water from its natural flow prior to construction, and that although both the velocity and volume of the water had increased since the developments were built, the Heards' house sat above the 100-year flood level, and accordingly the basement should not flood as a result of storm water drainage. He testified that the garden likely would have been eroded by the natural flow prior to construction of Windsor Farms, and that the Heards' installation of the dam and pond raised the ground water elevation of their lot. Aton stated that the subdivisions' storm water drainage designs

met the applicable City regulations and comported with sound engineering practices. He did acknowledge that his study and conclusions assumed proper maintenance of the drainage structures. David Wilson, a geotechnical engineer who performed soil tests on borings taken from around the Heards' house, testified that the cracks in the house were attributable to differential settlement of the subsurface soils, not to surface water runoff, and that he found no evidence of impairment of the foundation of the house as a result of soil saturation from the drainage problems.

1. In case no. A89A2158, the City contends the trial court erred by denying in part its motion for judgment n.o.v. and in denying its motion for new trial made on the grounds that the damages claimed by the Heards did not result from any act or omissions of the City, and that the Heards' evidence as to the structural damage of their house was speculative because Moore conducted no soil tests.

We do not agree. As the City has acknowledged, "[t]he failure of a [city] adequately to maintain a culvert, resulting in property damage from flooding, can constitute a nuisance. [Cit.]" *Fulton County v. Wheaton*, 252 Ga. 49, 50 (1) (310 SE2d 910) (1984). Moreover, combined with failure to maintain drainage structures, the approval of upstream development which results in a nuisance arising from increased surface water runoff can give rise to municipal liability. Id.; see *City of Columbus v. Myszka*, 246 Ga. 571, 572 (1) (272 SE2d 302) (1980). Here, as in *Wheaton*, there was testimony that the City had failed to maintain the culverts upstream from the Heards' property, and that accumulated debris was causing the drainage structures to overflow into their yard. In addition, Martin testified that any increased surface water drainage was attributable to development in the area, which had been approved by the City. While the Heards' expert, Moore, stated that the surface water problem also resulted in part from inadequate storm drainage management by both subdivision developers, the jury's decision to award only sixty percent of the damages sought by the Heards may reflect their assessment of that testimony. Moreover, although Moore's opinion that the structural damage resulted from excessive soil saturation was contradicted by the testimony of Wilson, which was based upon soil tests, "[t]his court does not pass upon the credibility of witnesses, nor the weight to be given evidence on disputed facts. These are questions for the jury. Whether their verdict is contrary to the evidence, or contrary to its weight, or decidedly and strongly against its weight, is a question the law vests in the trial judge's discretion. He may grant a new trial on these grounds, but this court has no such power. Where the trial judge approves the verdict, the sole question for determination by this court is whether there is any evidence sufficient to authorize it." (Citations and punctuation omitted.) *Pierce v. Taylor*, 190 Ga. App.

819, 820 (1) (380 SE2d 351) (1989). There being some evidence to support the jury's verdict as to damages for nuisance, we find no reversible error.

2. The Heards assert in their cross-appeal that the trial court's decision to grant judgment n.o.v. to the City on the issue of attorney fees was erroneous. They cite *Myszka*, supra, and *Columbus, Ga. v. Smith*, 170 Ga. App. 276 (316 SE2d 761) (1984) in support of their argument that attorney fees are recoverable in nuisance actions against municipalities even absent proof of bad faith or other ground delineated in OCGA § 13-6-11.

This argument is without merit. In Georgia, attorney fees are recoverable only when authorized by statute or by contract. E.g., *Money v. Thompson &c. Machinery Co.*, 155 Ga. App. 566, 567 (271 SE2d 699) (1980). In *Myszka*, supra at 573 (5), the Supreme Court found that under the facts of the case, the jury's award of attorney fees was authorized under former Ga. Code Ann. § 20-1404 (now OCGA § 13-6-11). Because in *Smith*, supra at 282 (2), this court did not specifically address the award of attorney fees, but held only that *Myszka* authorized the damages awarded by the jury, we find no support for the Heards' contention. As there was no other basis for an award of attorney fees in this action, see generally *Peachtree Purchasing v. Carver*, 189 Ga. App. 73, 75-76 (2) (374 SE2d 834) (1988), we affirm the trial court's ruling. See OCGA § 9-11-50; see generally *United States Fid. &c. Co. v. Blankenship &c. Co.*, 153 Ga. App. 335, 336-337 (2) (265 SE2d 66) (1980).

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 20, 1990.

*Erwin, Epting, Gibson & McLeod, Malcolm C. McArthur*, for appellant.

*L. Thomas Cain, Jr.*, for appellees.