## 34004. AVANT et al. v. SANDERSVILLE PRODUCTION CREDIT ASSOCIATION (SPCA) et al.
## 34005. SANDERSVILLE PRODUCTION CREDIT ASSOCIATION (SPCA) et al. v. AVANT et al.
## 34006. BLOODWORTH et al. v. SANDERSVILLE PRODUCTION CREDIT ASSOCIATION (SPCA) et al.

Nichols, Chief Justice.

J. Wright Avant was the owner of approximately 1,000 acres of land in Washington County, Georgia, which was divided into two portions by a road. He entered into two mineral agreements with Burgess Washington Clays, Ltd., in exchange for certain payments. The first agreement covered approximately 652 acres north of the road. The second agreement covered approximately 308 acres south of the road. Theile Kaolin Company subsequently became the transferee of Burgess Washington Clays, Ltd., under both contracts.

After these transactions, J. Wright Avant died intestate, leaving a wife, Clara P. Avant, and seven children, all in their majority, including Forace Lee Avant. As a year's support, the Probate Court of Washington County awarded Clara Avant the 308-acre tract lying south of the road, other real estate not in issue, and "all personal property consisting of household furnishings, appliances, money, time certificates, stocks, motor vehicles, farming equipment, livestock, contract rights, rentals, and any and all personalty whatsoever."

After the death of J. Wright Avant, Forace Lee Avant executed five notes to Sandersville Production Credit Association (SPCA). By one security deed, he purported to convey to SPCA a one-eighth interest in the 652-acre tract. By a second security deed, he purported to convey to SPCA a 1.92-acre tract known as "homeplace," and a 3.35-acre tract known as "hog parlor."

Additionally, Forace Lee Avant purported to assign or to pledge to SPCA 6,392 shares of stock in the family farm corporation, Avant Farms, Inc. On the reverse side of

the stock certificate of Avant Farms, Inc., and in the purported bylaws of Avant Farms, Inc., the following language appears: "No transfer of sale of any of the capital stock of this corporation shall be effective until sixty days notice of the desire to sell shall have been given by such stockholder or his legal representative to the other stockholders and such stockholders may purchase such capital stock at and for the value as shown by the last annual agreed valuation by the stockholders or book value whichever is greater." Additionally, Forace Lee Avant executed an instrument which purported to "assign, transfer and convey" to Tuttle Barksdale the 6,392 shares of common stock of Avant Farms, Inc., as a second lien, subordinated to the first lien held by SPCA.

Forace Lee Avant thereafter died testate, leaving Annette N. Avant, now Yongue, and three minor children. On application by Annette N. Avant Yongue, the judge of the Probate Court of Washington County set aside to her as 12 months' support certain property including "homeplace" and "all mineral rights owned by Forace Lee Avant 'Being a 1/8 undivided interest in and to' " the 652-acre tract.

SPCA declared in default and demanded payment of the outstanding indebtedness in the amount of $114,910.07 on the five notes and filed a public notice of impending foreclosure on "homeplace," "hog parlor," and on the one-eighth interest on the 652-acre tract, as well as on other land not in issue. Annette Avant Yongue, individually and as executrix of the estate of Forace Lee Avant, together with her three minor children, filed for injunctive and declaratory relief to halt the foreclosures and to set aside the security interests of SPCA in "homeplace," "hog parlor," the 652-acre tract and the 6,392 shares of stock in Avant Farms, Inc.

Clara P. Avant, the six remaining children of J. Wright Avant, and Avant Farms, Inc., petitioned for intervention, contending that all rights to both mineral contracts were vested in Clara P. Avant by virtue of the award of a year's support; that Clara owned a one-fifth undivided interest in the 652-acre tract; that each child only owned a 4/35ths interest in the 652-acre tract; that due to the restriction on the stock certificate, both

assignments were null and void; and that the year's support to Annette Avant Yongue was void because the property already had been previously acquired by Clara P. Avant under her award of a year's support.

Theile Kaolin Company and Barksdale joined as parties to assert the validity of their interests. Theile agreed to make royalty payments to anyone directed by the court.

The trial court held that: SPCA has valid security interests in "homeplace," "hog parlor," and the corporate stock; Tuttle Barksdale has a valid security interest in the stock subject to SPCA's prior lien; Clara P. Avant was not the sole owner of the lessor's interest under the mineral agreement, and Forace L. Avant's interest in the mineral agreement was included in his security deed to SPCA; the rights of SPCA and Barksdale in the stock are subject to the rights of purchase of the remaining stockholders of Avant Farms, Inc.; and SPCA was entitled to a general money judgment plus attorney fees.

*Case No. 34004*

1. Mrs. Yongue and her children first contend that the trial court erred in holding that SPCA has an interest in "homeplace" and "hog parlor" under one of the security deeds. They argue that a clause in the security deed on "homeplace" and "hog parlor" providing that "all the note or notes secured hereby fall due within three years from the date of this instrument" means that the five outstanding and overdue notes, *all* of which become due *outside* the above three-year time period, are not secured by the security deed.

The trial court found that the outstanding indebtedness represented by the five notes resulted from extensions of the debt owed to SPCA at the time the security deed was given. As such, the trial court concluded that the indebtedness is secured by a provision of the security deed securing ". . . (1) such loan, and all renewals and extensions thereof . . ." Additionally, the trial court found that even if a more constrained definition of the word "extensions" is adopted, the outstanding indebtedness is secured by a provision of the security deed securing ". . . (3) all other indebtedness of Borrower to Lender, now due or to become due or hereafter to be

contracted, which is or will be evidenced by a note or notes, the whole of the principal of which falls due within three (3) years from the date of this instrument, and all renewals and extensions thereof."

This court agrees and affirms the ruling of the trial court on this issue. "The paramount factor to consider in the interpretation of a contract is the true intention of the parties involved, and if that intention is clear, and it violates no established rule of law, it will be enforced, if sufficient words are utilized to express said intention. This is true 'irrespective of all technical or arbitrary rules of construction.' Code § 20-702; *Valdosta Plywoods v. Belote,* 75 Ga. App. 616, 619 (44 SE2d 128); *C. V. Hill & Co. v. Weinberg,* 67 Ga. App. 44 (19 SE2d 430)." *Carsello v. Touchton,* 231 Ga. 878, 880 (204 SE2d 589) (1974). Nothing in the language of the security deed suggests that notes given as extensions of notes given during the three-year period also must have been due within three years of the date of the security deed in order to be covered by the deed's "dragnet clause." There is no merit in the first enumeration of error.

2. Secondly, appellants contend that the trial court erred in holding that SPCA has a lien and valid security interest by virtue of a security deed upon the undivided 4/35ths interest in and to the lessor's interest under the instrument executed by J. Wright Avant to Burgess Washington Clays, Ltd., giving Burgess Washington Clays, Ltd. the right to mine bauxite and kaolin from a 652-acre tract of land.

The trial court held that the contracts gave the mining companies the right to enter upon the premises within a 40-year period and to separate from the mass all kaolin and bauxite that the tenant deemed to be commercially profitable. The court further held that the title and legal possession of the unmined kaolin and bauxite remained in J. Wright Avant and his successors in title until extraction had been completed. Therefore, the trial court concluded that the royalty rights were covenants running with the land and that SPCA became the transferee of all royalty rights held by Forace Avant by virtue of a security deed executed by Forace Avant in favor of SPCA on the 652-acre tract.

Appellants argue that the mineral contract is a sale of minerals in place; that when minerals are sold, the payments for the minerals, whether denominated as royalties or otherwise, are items of personalty which are held separate and distinct from any interest in the land itself; and that, therefore, the proceeds from a mineral contract are not included in a security deed on the land itself.

"It is sometimes difficult to determine whether a particular instrument is a mining lease or a grant of mineral in place." 54 AmJur2d 305, Mines and Minerals, § 123. This is one of those instances. The contract between J. Wright Avant and Burgess Washington Clays, Ltd. contains provisions and language which are characteristic of both types of agreements. If the mineral rights are to be sold only upon extraction, the interest created by the contract is similar to that created by a lease. Consequently, whatever interest in the minerals that Forace Avant had obtained as successor in interest to the original lessor would be passed to SPCA by virtue of the security deed executed by Forace Avant to SPCA on the 652-acre tract of land. Conversely, if the minerals were sold in their place, i.e., if title to the minerals was transferred to the mining company regardless of whether the minerals were extracted, the instrument would have passed an interest similar to that which would be passed by a deed. In that instance, SPCA would not be entitled to payments because the lessor and his successors in title would no longer have title to the minerals. See generally, 54 AmJur2d, Mines and Minerals.

After studying the instrument in question, this court comes to the conclusion that J. Wright Avant and Burgess Washington Clays, Ltd. intended to enter into an agreement to sell kaolin and bauxite only upon extraction. This court is not unmindful of the language in the instrument to the effect that "lessor grants and conveys all kaolin and bauxite," as well as a paragraph in which the lessor warrants "title" to the "tenant." Notwithstanding this language, this court is persuaded by other language in the document. The document continually refers to J. Wright Avant as "lessor" and to Burgess Washington Clays, Ltd. as "tenant." In one

instance, J. Wright Avant is referred to as the "landlord." Most important, however, are the provisions in the instrument which limit the time within which the kaolin and bauxite can be mined to 40 years, unless terminated sooner, and which designate that a "royalty" of 15 cents per specified unit shall be paid to the "lessor." The appellants point out that the agreement also provides for the payment by the mining company of $500 per year to the lessor and his successors. However, this amount is to be credited against any amounts due as royalty payments. *Palmer Brick Co. v. Woodward,* 138 Ga. 289 (75 SE 480) (1912). Cf., *Lanham v. Henry,* 135 Ga. 429 (69 SE 552) (1910); *Brooke v. Dellinger,* 193 Ga. 66 (17 SE2d 178) (1941); *Slade v. Rudman Resources, Inc.,* 237 Ga. 848 (230 SE2d 284) (1976); *Nelson v. Bloodworth,* 238 Ga. 264 (232 SE2d 547) (1977); 66 ALR2d 978, Minerals — Legal Estate or License.

Therefore, this court affirms the trial court's holding on this issue.

3. Appellants contend that the trial court erred in holding that SPCA has primary security interest and Tuttle Barksdale has a secondary security interest in the 6,392 shares of stock in Avant Farms, Inc. which were transferred to SPCA and Mr. Barksdale by Forace Avant to secure separate indebtedness. Appellants argue that transfers or pledges of this stock were prohibited by a corporate bylaw which prohibited "transfer or sale of any capital stock of [the] corporation . . . until 60 days notice of the desire to sell shall have been given by such stockholder or his legal representative to the other stockholders and such stockholders may purchase such capital stock at and for the value as shown by the last annual agreed valuation by the stockholders or book value whichever is greater." This stock transfer provision was prominently displayed on the certificate representing the shares of stock pledged or assigned to SPCA and Mr. Barksdale.

The trial court held that since the assignment of the stock was for loan purposes, there was no necessity to comply with the corporate bylaw at the time of the assignment. The court concluded that since the stock must now be sold to satisfy the two security interests,

notice must be given to the other stockholders to allow them to purchase proportional shares of the stock block.

This court need not reach the issue of whether the assignment of pledge of the stock was a "transfer or sale" within the meaning of the corporate bylaw because as the appellees-cross-appellants contend, the stock transfer restriction provision is void because it has not been properly adopted by the board of directors of Avant Farms, Inc. Code Ann. § 22-807 (a) specifically provides that: "[t]he initial bylaws of a corporation shall be adopted by its board of directors." Ga. L. 1968, pp. 565, 653; 1969, pp. 152, 200. The record clearly shows that the initial bylaws, which included the stock transfer provision, were adopted by the corporation's incorporator and sole stockholder. Although it may have been the practice in this state prior to the enactment of the Georgia Corporation Code for the initial bylaws to be adopted at the first meeting of the shareholders, in 1968 the law clearly showed how initial bylaws were to be validly adopted. See Nadler, Georgia Corporation Laws, § 324 (1950). See also, editorial comment to Code Ann. § 22-807. The record clearly shows that Avant Farms, Inc. was incorporated under the laws of the State of Georgia on April 8, 1972. Therefore, the trial court erred in holding that the stock transfer restriction provision of the bylaws of Avant Farms, Inc. had any effect upon the security interest held by SPCA and Mr. Barksdale in the 6,392 shares of stock.

4. Lastly, it is contended by appellants that SPCA is not entitled to attorney fees at the rate of 15 percent of the principal and interest of the general judgment because it did not comply with the notice requirements of Code Ann. § 20-506. Appellants argue that SPCA alleged that a total principal and interest sum of $114,910.07 as of October 21, 1977 was due when the correct amount should have been $121,680.08.

This court has examined the three-page notice sent by SPCA pursuant to the requirements of Code Ann. § 20-506 and concludes that the notice was sufficient. The amount claimed in the notice by SPCA was correct at the time. Subsequently, SPCA subcontracted from the

above-stated indebtedness the value of stock owned by Forace Avant in SPCA. After this set-off, the amount claimed by SPCA was reduced to $ 101,680.08. SPCA substantially complied with the requirements of Code Ann. § 20-506 (c). See *Dixie Construction Co. of Ga. v. Griffin,* 104 Ga. App. 457 (121 SE2d 926) (1961); *General Electric Credit Corp. v. Brooks,* 242 Ga. 109 (249 SE2d 596) (1978).

### Case No. 34005

SPCA brings this cross appeal.

1. SPCA contends that the trial court erred in ruling that Forace Lee Avant owned only a 4/35ths undivided interest in the 652-acre tract of land described in the security deed from Forace Avant to SPCA and in ruling that Mrs. Clara Avant is not estopped from claiming a one-fifth undivided interest in the same tract of land.

The trial court held that under Code Ann. § 113-903 (3) Clara Avant received a one-fifth interest and each child received a 4/35ths interest of the estate of J. Wright Avant. The court further found that Clara Avant had not acted in a way to estop her from claiming her one-fifth interest in the property.

SPCA, the cross appellant, concedes that Code Ann. § 113-903 (3) apparently supports the trial court's holding. However, SPCA argues that there are legitimate elements of gift and estoppel which limit Mrs. Avant's interest in this contested land to only a one-eighth undivided interest and which estop her from claiming otherwise. Specifically, SPCA argues that Clara Avant's monthly gifts of one-eighth of the royalty checks which she received from the mining company to Forace Lee Avant estops her from claiming her full one-fifth interest. Further, SPCA argues that since Forace Avant attempted to transfer by security deed a one-eighth interest in the 652-acre tract, all parties are now estopped from claiming that he, in fact, did not own the one-eighth interest. These first and second enumerations of error are completely without merit. See 31 CJS, Estoppel, § 13. See also *Howard v. Perkins,* 229 Ga. 279 (191 SE2d 46) (1972). The evidence supports a finding that Mrs. Avant was making gifts of her royalty checks to Forace Lee Avant, rather than giving him her mining interest.

2. The cross appellant SPCA also contends the trial court erred in ruling that the restrictions against the transfer of stock in Avant Farms, Inc. are binding on SPCA, in ruling that the purported meeting of stockholders of Avant Farms, Inc. on December 27, 1977 was a valid meeting of the stockholders, in ruling that the value of $2.64 per share set at that meeting is binding on SPCA and in ruling that the Avant Farms, Inc. stock owned by Forace Avant on the date of his death must be offered to the other stockholders of Avant Farms, Inc. prior to allowing said stock to be sold at public sale to satisfy the debt owing to SPCA. This court's holding in Division 3 of the opinion in Case No. 34004 addresses the first of these contentions and renders the remainder of them moot. The restrictions were not properly adopted by Avant Farms, Inc. and are not binding on SPCA. These rulings of the trial court are reversed.

### Case No. 34006

Clara P. Avant, Marvin W. Avant, Ellen A. Lashley, Lynnette A. Bryant, Joann A. Young, Jean A. Veasey, Maitland A. Bloodworth, and Avant Farms, Inc., as intervenor plaintiffs, cross appeal from the judgment of the trial court.

1. The two enumerations of error by the plaintiff-intervenors really address the same issue. Their contention is that the trial court erred in finding that SPCA had a security interest in an undivided 4/35ths interest in the 652-acre tract of land which included an undivided 4/35ths interest in and to the lessor's interest under the mining contracts, as well as an undivided 4/35ths interest in and to all kaolin and bauxite in and upon the 652-acre tract subject to the rights of the mining company under the mining contracts.

The trial court, citing *Bush v. Clemons,* 161 Ga. 311, 315 (130 SE 914) (1925), and Redfearn, Wills and Administration in Georgia, Section 328, 3rd Edition, found that the year's support award to Clara Avant out of the estate of J. Wright Avant, was not sufficiently definite to encompass the royalty rights in the 652-acre tract of land. Therefore, the trial court held that Forace Avant held title to the 4/35ths interest in the mineral rights in the 652-acre tract of land unencumbered by any claim of

Clara Avant by virtue of her year's support award. Accordingly, the trial court found that by virtue of the security deed, SPCA owned the 4/35ths interest which was formerly owned by Forace Avant.

*Bush v. Clemons,* supra, cited by the trial court in support of its holding, dealt with the issue of whether a report of appraisers sufficiently described real property. The decisions of this court have consistently required something more in a description of real property than is required in a description of personalty. *Blackwell v. Partridge,* 156 Ga. 119 (2) (118 SE 739) (1923). However, the real concern in all these cases, whether concerning real property or personalty, is that the description employed by the appraisers in the return be sufficiently definite to enable a court to determine which property is being awarded.

In the present case, part of the award of the appraisers as a year's support included "all personal property consisting of household furnishings, appliances, money, time certificates, stocks, motor vehicles, farming equipment, livestock, contract rights, rentals and any and all personalty whatsoever." That clause was insufficient to convey the covenants as to the mineral rights, which are realty, not personalty. See Division 2 of our opinion in Case No. 34004. See also *Forsyth Corporation v. Rich's, Inc.,* 215 Ga. 333, 338 (110 SE2d 750) (1959). These enumerations of error are without merit.

*Judgment affirmed in part; reversed in part. All the Justices concur.*

Submitted September 19, 1978 — Decided February 15, 1979 — Rehearing denied February 27, 1979.

*Gilmore, Waddell & Phillips, David W. Waddell,* for appellants (Case No. 34004).

*Dickens, Mangum, Burns & Moore, G. L. Dickens, Jr., Lawrence, Rice & Lawrence, George D. Lawrence, Robert W. Wommack, Jr., Thomas A. Hutcheson, Clarke C. Avant,* for appellees (Case No. 34004).

*G. L. Dickens, Jr., Joel D. Burns,* for appellants (Case No. 34005).

*David W. Waddell, George D. Lawrence, Robert W. Wommack, Jr., Thomas A. Hutcheson, Clarke C. Avant,* for appellees (Case No. 34005).

*George D. Lawrence,* for appellants (Case No. 34006).

*G. L. Dickens, Jr., David W. Waddell, Robert W. Wommack, Jr., Thomas A. Hutcheson, Clarke C. Avant,* for appellees (Case No. 34006).