### 34129. M. D. HODGES ENTERPRISES, INC. v. FIRST GEORGIA BANK.

HALL, Justice.

In September 1972, First Georgia Bank (appellee) loaned John K. Porter Co., a real estate brokerage firm,

$10,000. To secure the loan, Porter granted to First Georgia a security interest in account commissions from M. D. Hodges Enterprises (appellant). First Georgia never filed a financing statement, but it did notify Hodges of the assignment, directing Hodges to pay the account commissions to Porter until further notice from First Georgia.

In August 1974, Porter used these same account commissions as security for a loan from Trust Company Bank. In July 1975, Trust Company directed Hodges to pay the account commissions directly to it. In February 1976, Hodges Enterprises "cashed out" the account with Trust Company, i.e. Hodges allegedly paid a lump sum to Trust Company in satisfaction of all the monthly payments owed under the commission agreement.

When Porter defaulted on a loan to First Georgia, appellee notified Hodges in May 1976 to pay the account commissions to First Georgia directly. This loan on which Porter defaulted was not the original one which First Georgia made or a renewal of that original loan, but a $30,000 loan which represented the consolidation of two $15,000 notes. The first of the $15,000 loans was made in September 1973. First Georgia claims that the Hodges' account commissions were part of the security for the $30,000 loan through a "dragnet" clause in the initial $10,000 loan. It is undisputed that the $10,000 loan was repaid.

When Hodges refused to pay any account commissions to First Georgia, First Georgia sued for all of the commissions owed after May 1976 under Code Ann. § 109A-9—502 (1). The trial court granted summary judgment to Hodges, but the Court of Appeals reversed. The Court of Appeals held that although First Georgia had not perfected its security interest, the notification to Hodges of Porter's assignment of the account commissions to First Georgia created a possible ground of recovery. We granted certiorari to consider the case more fully.

We agree with the Court of Appeals that First Georgia's security interest is unperfected through its failure to file a financing statement. Code Ann. § 109A-9—302 requires filing of a financing statement to perfect a security interest in accounts. The official

comment to Code Ann. § 109A-9—302 (1) (e) indicates that the exception from filing for the isolated or casual assignment of accounts is not available to "any person who regularly takes assignments of any debtor's accounts." A bank which regularly loans money and accepts accounts as security must file to perfect its security interests and cannot rely on the automatic perfection of § 109A-9—302 (1) (e). See *Park Avenue Bank v. Bassford,* 232 Ga. 216 (205 SE2d 861) (1974).

Because First Georgia never perfected its security interest, it acquired at most only the limited rights of a secured but unperfected creditor.[1] Code Ann. § 109A-9—301 (1) (a) states that "an unperfected security interest is subordinate to the rights of persons entitled to priority under 109A-9—312." Therefore Trust Company's perfected interest in collateral was superior to any unperfected interest of First Georgia. First Georgia's only possible ground of recovery lies in asserting its secondary status as a secured but unperfected party.

When Porter defaulted on its payments to Trust Company, Trust Company allegedly acquired sole interest in the account commissions which it then "cashed out" with Hodges. The sparse record in this case does not reveal whether Trust Company foreclosed under Code Ann. § 109A-9—504, proceeded under Code Ann. § 109A-9—505 or used another method. A valid foreclosure under the Uniform Commercial Code would discharge First Georgia's subordinate security interest. Code Ann. § 109A-9—504 (4).[2] But if the foreclosure were invalid and

---

[1]Hodges contends that the account commissions were never collateral for the $30,000 loan. This dispute can be settled at trial. This opinion assumes that First Georgia can demonstrate the existence of a security interest in the accounts. If it does not, First Georgia would not be entitled to *any* recovery from Hodges on any theory.

[2]The notification requirements for foreclosure by a secured party were changed by the 1978 amendments to the UCC (Ga. L. 1978, pp. 1081, 1130-1132). Because all transactions involved in this litigation occurred prior to those amendments, the parties have agreed that pre-amendment law governs the case.

Hodges was unprotected by Code Ann. § 109A-9—504 (4), First Georgia's subordinate security interest would still exist. That subordinate security interest would be entitled to satisfaction from the account commissions after satisfaction of the perfected security interest of Trust Company.

In other words, First Georgia must surmount two hurdles in order to recover. It must demonstrate that the actions of Hodges and Trust Company were insufficient to discharge First Georgia's subordinate security interest and that the reasonable "cash out" value of the account exceeded the amount necessary to satisfy Trust Company's perfected interest. Because the record does not demonstrate that First Georgia will be unable to make this showing, the Court of Appeals' decision that Hodges was not entitled to summary judgment is affirmed.

Any intimation in the opinion of the Court of Appeals that First Georgia's notification to Hodges of the first assignment of the account operated to create a duty on the part of the account debtor to pay only First Georgia is specifically disapproved. To protect its security interest against other creditors, the Uniform Commercial Code requires the creditor to file a financing statement. Notification of the account debtor is not a substitute for this filing.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 8, 1979 — DECIDED MAY 30, 1979.

*King & Spalding, Charles M. Shaffer, Jr., Nolan C. Leake, B. Knox Dobbins,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, Otto F. Feil, III,* for appellee.