## 69291. BANK OF CAVE SPRING v. GOLD KIST, INC.
### (327 SE2d 800)

DEEN, Presiding Judge.

Appellee Gold Kist, Inc., doing business as Farmers Mutual Exchange ("Gold Kist"), brought garnishment proceedings July 21, 1983, against James (or Jim) Morris, Jr. ("Morris"), for debts incurred in connection with Morris' dairy business. Atlanta Dairies, Inc., garnishee, was ordered to pay into the registry of the Floyd County Superior Court all funds in its possession which belonged to or were owed to Morris. Within the requisite time Atlanta Dairies answered the summons of garnishment, stating that it held no funds belonging to or owed to Morris and that there were prior assignments of Morris' milk proceeds in favor of several creditors, including appellant Bank of Cave Spring ("bank"), amounting to more than the debt alleged by Gold Kist.

In response to the court's order of August 2, 1983, that all parties having an interest in these funds file claims within thirty days, appellant bank filed a claim showing assignments of milk proceeds in its favor, all executed prior to institution of the garnishment action (February 21, 1981; July 21, 1981; February 12, 1982). The letters constituting the first two assignments are directed to Atlanta Dairies and recite "For value received, from the Bank of Cave Spring"; the third purported assignment, addressed to an official of appellant bank, alludes to "my debt at the Bank of Cave Spring" and authorizes deduction of a sum certain from the monthly checks which, apparently, were being remitted to the bank by Atlanta Dairies.

Appellant also filed a traverse to the garnishment, citing the three assignments. After a hearing the Floyd County Superior Court entered an order holding that the assignments of certain creditors were valid but that those of appellant Bank of Cave Spring were invalid because the latter concerned future funds and were not supported by consideration. The court held that Gold Kist's claim to the funds was superior to that of appellant because of the invalidity of the latter's assignments.

Appellant filed a motion for reconsideration supported by evidence consisting of loan documents showing a loan of $57,154.24 from appellant to Morris, made on September 24, 1982, and having as collateral an assignment of milk proceeds and of shares of common and preferred stock of Atlanta Dairies. The court denied the motion on the ground that the additional evidence could not properly be considered because it had been available before the former order was entered and should have been submitted before that date.

On appeal, the Bank of Cave Spring enumerates as error the trial court's ruling that the assignments of proceeds from milk sales held by the bank were invalid and that appellee Gold Kist therefore had

the superior claim to the funds. *Held*:

1. Black's Law Dictionary, 5th ed. (West Pub. Co., 1979), at p. 109, defines *assignment* as "[a] transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein. [Cits.] It includes transfers of all kinds of property . . . The transfer by a party of all its rights to some kind of property, usually intangible property . . . ." Accord, 4A Words & Phrases 101 et seq. (West Pub. Co., 1969). An assignment, unlike a lien, is not merely a charge upon the subject property but is an absolute, unconditional, and completed transfer of all right, title, and interest in the property that is the subject of the assignment (whether in the property as a whole or a specified estate in or portion of the property), with the concomitant total relinquishment of any control over the property. Restatement of Contracts, 2nd, defines the assignment of a right, at § 317 (1), as a "manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance is extinguished in whole or in part and the assignee acquires a right to such performance." See *Johnson v. Brewer*, 134 Ga. 828 (68 SE 590) (1910); *King v. Gilbert*, 445 FSupp. 479 (N. D. Ga., 1977). An assignment is a contract and, in order to be valid, must possess the same requisites (parties, subject matter, mutual assent, consideration) as any other contract. 4A Words & Phrases 109.

Assignments may be either legal or equitable. "[T]o effect a legal assignment, there must be evidence of intent to assign or transfer the whole or part of a specific thing, debt, or chose in action, and the subject matter should be sufficiently described to make it capable of being identified." 6 AmJur2d 185. An equitable assignment likewise makes an absolute appropriation of, or transfer of a present interest in, a fund or chose in action to the assignee, but in a manner that for one reason or another does not amount to a legal assignment. "In equity . . . [t]he assignment of contingent interests, expectancies, and things not *in esse*, but resting in mere possibility, . . . takes effect when the thing assigned comes into existence, . . . [provided that the assignment] was fairly made, is supported by a sufficient consideration, and is not contrary to public policy." Id. at 193; accord, *Walton v. Horkan*, 112 Ga. 814 (38 SE 105) (1900).

The assignment of an existing obligation or contractual relationship, in contrast, is legal in nature rather than equitable. "Except as otherwise provided by statute, an assignment of a right to payment expected to arise out of [an] existing . . . or continuing business relationship is effective in the same way as an assignment of an existing right." Restatement of Contracts, 2nd, § 321 (1). See *River Junction v. Maryland Cas. Co.*, 110 F2d 278 (5th Cir.), cert. den. 310 U. S. 634 (60 SC 1077, 84 LE 1404) (1940), in which the court held that when a contractor due a progress payment sent to the owner a request that

the latter send a check directly to the bank "for our account when the same is ready to be paid," along with an assignment reading, "For value received we hereby sell, transfer, and assign the above-described cheque or any amount thereof required to pay" a stated sum with interest, and any further sums that the bank might advance, the assignment was legal rather than equitable.

Georgia law permits a debtor to prefer one creditor over another and to make assignments to that end, so long as the transfer is made in good faith and does not benefit the debtor. OCGA §§ 18-2-40, 18-2-42; *Moncrief Furnace Co. v. Northwest Atlanta Bank*, 193 Ga. 440 (19 SE2d 155) (1942); *Bank of Savannah v. Planters Bank*, 22 Ga. 466 (1857). In the instant case the assignments to appellant bank appear to have been made in accordance with this statutory authorization.

The first two of the three purported assignments in the case *sub judice* are in the form of letters from Morris, the debtor, to Atlanta Dairies, instructing the latter to remit directly to appellant bank certain proceeds from milk sales. The first, dated February 21, 1981, recites, "For value received, from the Bank of Cave Spring," and directs Atlanta Dairies "to deduct $2,500 per month from my milk check and remit same to appellant for my credit." Elsewhere in the letter Morris alludes to "this assignment." At the bottom of the letter, above the signature of Atlanta Dairies' Executive Vice President, appears the notation, "This agreement is accepted subject to prior assignment. Assignments take priority in order of date." The second letter, dated July 21, 1981, likewise recites "For value received, from the Bank of Cave Spring," and instructs Atlanta Dairies "to use this letter as your authority to remit the balance of my monthly milk check to [appellant] . . . It is my understanding the only assignments ahead of this assignment will be $8,700 to FHA, $2,500 to Commercial National Bank and $2,500 to the Bank of Cave Spring." This document bears the following notation by Atlanta Dairies: "There is an assignment to Borg Warner Leasing. That will have to be honored before this assignment of the balance of check is sent to Bank of Cave Spring, Plus the others mentioned above."

The third document under which the Bank makes its claim is dated February 12, 1982, and is in the form of a letter addressed to Dennis Shields of the Bank of Cave Spring. This letter reads, in pertinent part: "Beginning with the March Milk Check from Atlanta Dairies, of which you receive 100% of balance due me after payment deductions, please deduct $5,000 and apply to my debt at the Bank of Cave Spring. This $5,000 payment each month is over, and beyond, the $2,500 payment you are now receiving." This third purported assignment does not recite "For value received" and does not refer to itself as an assignment, but does refer to the sum assigned in the Feb-

ruary 21, 1981 letter ("the $2,500 payment you are now receiving"). The document would appear to be in the nature of an attempted amendment to, or modification of, the July 21 assignment, making more specific the general assignment of "the balance of my monthly milk check." We note that, in view of the total relinquishment required for a true assignment (see our discussion, supra), this attempt to alter — actually, to reduce — the quantum assigned in the July letter would necessarily be of no legal effect. The only alternative to this conclusion would be to hold that the July 21, 1981 letter did not constitute a valid assignment — this despite the fact that on its face it bears the indicia of a valid assignment (see supra).

The trial court in its order of December 29, 1983, refers to assignments — or "an assignment" — but holds the assignment to be equitable rather than legal because " 'a legal assignment must relate to a thing in being, whereas an equitable assignment covers contingent interests, expectancies, and things potential.' [Cit.] The court finds that the assignment to the Bank of Cave Spring is not a legal assignment in that its intent is to assign monies that became due the defendant in the future as a result of future milk sales." In concluding that the bank's assignment is equitable rather than legal in nature, the trial court quotes from the Supreme Court's decision in *Jones v. Glover*, 93 Ga. 484, 487 (1893): "In order to infer an equitable assignment, such facts or circumstances must . . . not only raise an equity between the assignor and assignee, but show that the parties contemplated an immediate change of ownership with respect to the particular fund in question, not a change of ownership when the fund should be collected or realized."

The court notes that not only *Jones v. Glover*, supra, but a number of other cases relied on by the trial court or by appellee can be distinguished from the case at bar in several significant respects; e.g., *First Nat. Bank of Thomasville v. MacDougald Constr. Co.*, 45 Ga. App. 853 (166 SE 256) (1932); *Didschuneit v. Enochs Lumber & Mfg. Co.*, 42 Ga. App. 527 (156 SE 720) (1930); *Brown Guano Co. v. Bridges*, 34 Ga. App. 652 (130 SE 695) (1925). Because those distinctions are not central to the issue actually before us, however, we decline to include in our opinion what would necessarily be a protracted discussion. See OCGA §§ 13-3-41, 13-3-42; *Pepsi-Cola Bottling Co. v. First Nat. Bank*, 248 Ga. 114 (281 SE2d 579) (1981); *Trust Co., Columbus v. Rhodes*, 144 Ga. App. 816 (242 SE2d 738) (1978). Suffice it to say that, for a variety of reasons which we find to arise from the evidence in the record before us, we are not persuaded by the analysis set forth in the trial court's order that the assignment to Bank of Cave Spring is equitable rather than legal in nature and is unsupported by sufficient consideration to render it a valid assignment. In the fact situation of the instant case, however, the issue is not

whether the assignments, the first two of which we find to be valid and supported by sufficient consideration, are equitable or legal. See OCGA §§ 13-3-41, 13-3-42; *Smith v. Folsom*, 190 Ga. 460 (9 SE2d 824) (1940); *Citizens Bank, Blakely v. Hall*, 179 Ga. 662 (177 SE 496) (1934). The dispositive issue is, rather, whether under current Georgia law a judgment lien takes precedence over a prior security interest for which no financing statement has been filed.

2. In 1962 Georgia adopted the Uniform Commercial Code (UCC), which has as its stated purpose the provision of a uniform system for dealing with commercial transactions. OCGA § 11-1-102; see also Ga. Laws 1962, p. 156. The revised UCC is now codified at OCGA, Title 11. Article 9 of this Title, captioned "Secured Transactions; Sales of Accounts and Chattel Paper," applies "to any sale of accounts or chattel paper" and "to security interests created by contract including . . . assignment." OCGA § 11-9-102 (1) (b), (c). Specifically excluded from Article 9 coverage is "a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness." OCGA § 11-9-104 (e). Under this last-cited provision it would appear initially that Morris' assignment of a portion of the proceeds of his milk accounts, under an ongoing contract with Atlanta Dairies, would come within the exclusion provided by § 11-9-104 (e), and that the transaction would consequently be governed by Codal provisions other than Article 9. As the Official Comment (#6) to the cited section explains, however, "In general[,] sales as well as security transfers of accounts . . . are within the Article . . . Paragraph (e) excludes from the Article certain transfers of . . . intangibles which, by their nature, have nothing to do with commercial financing transactions." As a bank, appellant of course does engage regularly in commercial financing transactions.

Moreover, Section 11-9-104 (e) must be read *in pari materia* with § 302 (e), which requires the filing of a financing statement for perfection of "*all* security interests except the following: . . . (e) an assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor." (Emphasis supplied.) The relevant Official Comment (#5) is, in pertinent part, as follows: "The purpose of the subsection . . . is to save from *ex post facto* invalidation casual or isolated assignments . . . Under [certain broadly drafted accounts receivable statutes] many assignments which no one would think of filing might have been subject to invalidation. Any person who regularly takes assignments of any debtor's accounts should file." Thus the exemptions permitted by §§ 104 (e) and 302 (e) are not available to banks. Georgia's case law is in accord with the cited Official Comments. See *M. D. Hodges Enterprises v. First Ga. Bank*, 243 Ga. 664 (256 SE2d 350) (1979), which was decided under

the UCC provisions and which further held that actual notice of an assignment is not the equivalent of filing a financing statement. See also J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code, Chap. 22, 23 (West Pub. Co. 1972), and cases cited therein. Under relevant UCC provisions incorporated in the Georgia Code, then, it would appear both that Morris' assignments to appellant Bank of Cave Spring are subject to the cited provisions, and that the exception for isolated assignments is not applicable to appellant, as an institution which "regularly takes assignments of [a] debtor's accounts."

As noted in Division 1, supra, under Georgia law as it existed prior to the adoption of the UCC, a legal assignment was an absolute and unconditional transfer of a present interest in an existing fund and required the same elements as any other contract. The requisites for an equitable assignment were in essence the same as those for a legal assignment, and the execution of a valid, *bona fide* assignment of either kind served to remove the subject property from the control of the assignor and to vest title and control in the assignee. Thus the effect of a valid assignment executed prior to the institution of garnishment or similar proceedings was to place the subject property beyond the reach of a judgment creditor. See, e.g., *Suttles v. Vickery*, 179 Ga. 751 (177 SE 714) (1934); *Walton v. Horkan*, supra; *City Natl. Bank v. Bob's Candy & Pecan Co.*, 56 Ga. App. 37 (191 SE 877) (1937). In the instant case the assignment to appellant would have had priority over Gold Kist's judgment lien.

Since the assignment was an unperfected security interest under OCGA § 11-9-302, however, then under OCGA § 11-9-301 (1) (b) the assignment is subordinate to the rights of "[a] person who becomes a lien creditor before the security interest is perfected . . ." Under OCGA § 11-9-301 (3), "[a] 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy, or the like . . ."; i.e., by a garnishment in this case. The trial court correctly held that appellee's claim was superior to that of appellant, and on the principle of "right for any reason," we must affirm the judgment below.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED MARCH 6, 1985.

*T. Peter O'Callaghan, Jr.*, for appellant.
*Clinton J. Morgan*, for appellee.