907 F.2d 1090
 The BUCKEYE CELLULOSE CORPORATION, Plaintiff,
v.
SUTTON CONSTRUCTION COMPANY, INC., et al., Defendants,
Integon Indemnity Corporation, Defendant-Appellee,
George W. McGriff, Charles G. Sutton, President, Sutton
Construction Company, Defendants-Appellants.
 No. 89-8430.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 2, 1990.
 
 1
 Kenneth I. Dious, Dious, Bailey and Associates, Athens, Ga., for defendants-appellants.
 
 
 2
 George W. McGriff, Atlanta, Ga., pro se.
 
 
 3
 Russell M. Boston, Sell and Melton, Macon, Ga., for Intergon Indem. Corp.
 
 
 4
 Gary R. Allen, Chief, Robert L. Baker, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for U.S.
 
 
 5
 Appeal from the United States District Court for the Middle District of Georgia.
 
 
 6
 Before JOHNSON and CLARK, Circuit Judges, and BROWN*, Senior District Judge.
 
 WESLEY E. BROWN, Senior District Judge:
 
 7
 This is an appeal of the district court's order disposing of funds in an interpleader action. The district court awarded the funds to appellee Integon Indemnity Corporation ("Integon"). Two other claimants to the funds, George McGriff and Charles Sutton, argue that the court erred in awarding the funds to Integon. For the reasons set forth herein, we affirm.
 
 
 8
 I. Background.
 
 
 9
 In October of 1980, Integon issued surety bonds on behalf of Sutton Construction Company ("Sutton") on four construction projects. In return, Sutton executed a General Indemnity Agreement under which Sutton agreed to indemnify Integon for any loss incurred on the surety bonds. In early 1982, an attorney for Integon, Larry Palmer, reviewed Sutton's bonded contracts and found that the contracts would produce losses. According to Mr. Palmer's affidavit, funds received by Sutton on the bonded contracts had been diverted to an unbonded contract between Sutton and the Buckeye Cellulose Corporation ("Buckeye"). Shortly thereafter, Mr. Charles Sutton, president of Sutton Construction Company, signed a document assigning to Integon all of Sutton's right, title and interest in the proceeds due on a contract between Sutton and Buckeye involving a project known as "the saw mill at Barnesville, Lamar County, Georgia." The stated purpose of the assignment was to collateralize Integon "as a result of exposure it has or may have as a result of contracts bonded on behalf of Sutton Construction Company, Inc." Integon filed a U.C.C.-1 form in Lamar County that described the nature of the assignment. Integon subsequently expended funds to insure completion of the bonded projects.
 
 
 10
 In late 1982, after discussions with Charles Sutton, Larry Palmer filed suit for Sutton alleging a breach of contract by Buckeye. Buckeye asserted a counterclaim against Sutton. Subsequently, Mr. Sutton became concerned about Larry Palmer's representation of both Integon and Sutton and Sutton dismissed Palmer as his attorney. Integon referred Sutton to an attorney, but Mr. Sutton chose to retain George McGriff to represent Sutton Construction Company. Shortly thereafter, the district judge in the Buckeye suit dismissed Integon from that case.[1]
 
 
 11
 Mr. McGriff successfully represented Sutton in its suit with Buckeye. Although Buckeye asserted a counterclaim against Sutton for breach of their construction contract, the district court ruled sua sponte that the construction contract under which Sutton was performing was unconscionable and was therefore unenforceable. The court went on to find in favor of Sutton on what the court termed a quantum meruit claim and awarded Sutton $52,297.92 in damages. This figure represented Sutton's costs on the Buckeye project plus ten percent. The judgment was entered on January 10, 1985.
 
 
 12
 Before Buckeye paid the judgment, Integon asserted a right to the proceeds of the judgment by virtue of its prior assignment from Sutton. The IRS also asserted a claim against the proceeds for unpaid taxes. Faced with these competing claims, Buckeye filed this interpleader action and deposited the amount of the judgment into the court registry. Sutton's attorney, George McGriff, then filed an attorney's lien against the fund on February 22, 1985, in the amount of $65,414.76.
 
 
 13
 The district court in the instant case ruled that Integon was entitled to the interpleader fund. The court found that Sutton's assignment of contract proceeds to Integon was a valid equitable assignment and that, as such, it took priority over a subsequently filed attorney's lien.
 
 
 14
 II. Issues on Appeal.
 
 
 15
 Appellants raise the following issues on appeal: whether the district court erroneously interpreted the judge's rulings in Sutton's suit against Buckeye; whether the purported assignment from Sutton to Integon was null and void; whether equity requires that an attorney who creates a fund be entitled to recover fees and expenses from the fund; whether Georgia law gives George McGriff an attorney's lien superior to all other claims; whether Integon has standing to claim the interpleader fund on behalf of the Small Business Administration; and whether Integon is entitled to any attorney's fees in the interpleader action.
 
 
 16
 Appellant's first argument is that the district court erroneously determined that Sutton was awarded damages from Buckeye on a quantum meruit basis. Appellants argue that the judgment against Buckeye was not based upon either an express or an implied contract. Although they do not state so expressly, appellants apparently contend that the judgment against Buckeye was outside the scope of the assignment to Integon, which assigned only "proceeds due on a contract."
 
 
 17
 Appellant's argument that the district court misconstrued the basis of the judgment against Buckeye is not supported by the record. After deciding that the express contract between Buckeye and Sutton was unconscionable, the district judge in the Buckeye case directed the parties to submit arguments as to what damages Sutton should be awarded. In his December 19, 1984, order on this issue the district judge stated: "Having carefully considered all of the evidence submitted by the plaintiffs and the defendants as to the amount to be awarded the plaintiff on a quantum meruit basis, the court finds that the following represents the amount that should be awarded the plaintiff in accordance with the laws of this state...." The final judgment in the case stated: "Judgment is hereby entered in favor of the plaintiff and against the defendant ... on plaintiff's quantum meruit claim." In light of these entries, it was not erroneous for the district court to conclude that Sutton recovered from Buckeye on a quantum meruit basis.[2]
 
 
 18
 We must reject any contention that the proceeds of the judgment against Buckeye were outside the scope of the assignment to Integon. Clearly, Sutton intended to assign its right to payment for work performed on Buckeye's behalf when it assigned "proceeds due on a contract." The judgment against Buckeye was based in quantum meruit, which is considered to be an implied agreement to pay the reasonable value of services performed. Thus, the subject matter of the assignment was identical to the subject matter of the judgment: both concerned the payment due Sutton for work performed on Buckeye's behalf on the saw mill project. To interpret the assignment as conveying proceeds due on an express contract but not proceeds due on an implied agreement, where the subject under either theory is the same, would require that the court interpret the assignment in an overly technical manner that defeats the intentions of the parties. The district court correctly declined to do this. See O.C.G.A. Sec. 13-2-3; Avant v. Sandersville Production Credit Association, 243 Ga. 173, 253 S.E.2d 176 (1979).
 
 
 19
 Appellant's next argument is that the assignment from Sutton to Integon was null and void. Appellant sets forward three reasons why the assignment should be declared void: it was not supported by consideration, it did not show an intent to effect an immediate transfer, and it did not identify a particular fund as the subject of the assignment.
 
 
 20
 As to the contention that the assignment was unsupported by consideration, the district court correctly noted that Sutton was obligated under the General Indemnity Agreement to deposit collateral with Integon if such a demand was made. Thus, Sutton was fulfilling its obligations under the General Indemnity Agreement and the assignment was supported by the consideration given for that agreement.
 
 
 21
 Appellant next argues that the assignment was invalid because it did not show an intent to effect an immediate transfer of the contract proceeds. The language of the assignment stated in part:
 
 
 22
 For and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the undersigned does hereby assign to Integon Indemnity Corporation, P.O. Box 3199, Winston-Salem, North Carolina, 27152, all right, title and interest in and to the proceeds due on a contract between Charles Sutton Construction Company, Inc., and Buckeye Cellulose Corporation involving the project known as the saw mill at Barnesville, Lamar County, Georgia.
 
 
 23
 As the district court found, the intention to effect an immediate transfer is apparent from the face of the assignment. Cf. Bank of Cave Spring v. Gold Kist, Inc., 173 Ga.App. 679, 327 S.E.2d 800 (1985) (Assignment of a right is defined in the Restatement of Contracts 2d as a "manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance is extinguished in whole or in part and the assignee acquires a right to such performance.")
 
 
 24
 Sutton next contends that the assignment failed to identify a particular fund. This argument is not persuasive in light of the language of the assignment, which described specifically the contract between Buckeye and Sutton involving the saw mill project. This description of the fund was sufficient to make it identifiable. See 6 Am.Jur.2d Assignments 185. Thus, we agree with the district court that the document executed by Sutton met the requirements of a valid assignment under Georgia law and we reject appellants' argument that the assignment was null and void.
 
 
 25
 Appellant McGriff argues that equity requires that he be awarded fees and expenses from the interpleader fund. In support of this argument, appellant cites the equitable maxim that one who accomplishes the creation of a fund for the benefit of another is entitled to reimbursement therefrom. It must be observed, however, that if Mr. McGriff is allowed to deduct his fees and expenses from the fund, there will be no benefit to Integon. Moreover, as the district court noted, the equities are not all in Mr. McGriff's favor. Mr. McGriff was aware when he took the case that Sutton had assigned the contract proceeds to Integon. Despite this, the record reveals no attempt by Mr. McGriff to reach an accommodation with Integon regarding the payment of attorney's fees. Indeed, the record suggests that Mr. McGriff rejected attempts by Integon to involve itself in the Buckeye suit. Mr. McGriff subsequently took actions adverse to Integon's interests. Although such actions were entirely proper for Mr. McGriff as the representative of Sutton's interests, they refute any suggestion that he was working on Integon's behalf. Cf. Griner v. Foskey, 158 Ga.App. 769, 282 S.E.2d 150 (1981). Mr. McGriff's representation was for the benefit of his client, not for the benefit of Integon. Cf. Commercial Union Insurance Company v. Scott, 116 Ga.App. 633, 158 S.E.2d 295 (1967). He must therefore look to his client for payment, not to the fund assigned to Integon. Cf. Law Office of Tony Center v. Baker, 185 Ga.App. 809, 366 S.E.2d 167 (1988) (General rule is that fees for services rendered by an attorney must be paid by the person who employs him.)
 
 
 26
 Appellant McGriff also argues that Georgia law makes his attorney's lien superior to the claim of Integon. In support of this argument, appellant cites O.C.G.A. Sec. 15-19-14(b), which provides:
 
 
 27
 Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens; and no person shall be at liberty to satisfy such an action, judgment or decree until the lien or claim of the attorney for his fees is fully satisfied. Attorneys at law shall have the same right and power over the actions, judgments, and decrees to enforce their liens as their clients had or may have for the amount due thereon to them.
 
 
 28
 It appears that under Georgia common law, however, Integon's interest in the contract proceeds would not be characterized as a lien. Bank of Cave Springs v. Gold Kist, Inc., 173 Ga.App. 679, 327 S.E.2d 800 (1985) ("An assignment, unlike a lien, is not merely a charge upon the subject property but is an absolute, unconditional, and completed transfer of all right, title, and interest in the property that is the subject of the assignment....") By virtue of the assignment, Sutton transferred its interest in the contract proceeds to Integon, at least to the extent of Integon's losses on the bonded projects. Under the principle expressed in Leiden v. General Motors Acceptance Corporation, 136 Ga.App. 268, 220 S.E.2d 716 (1975), the lien of Sutton's attorney could not attach to property in which his client had no interest. In Leiden, an individual named Bright purchased an automobile in which GMAC held a first lien. Bright purchased insurance for the car and the insurance policy named GMAC as the loss payee. A short time after purchase the car was destroyed by fire. The insurance company refused to pay and Bright retained an attorney to help secure payment. The insurance company subsequently agreed to pay and issued a check jointly payable to GMAC and Bright. GMAC refused to endorse the check, however, because Bright's attorney sought to take his fee out of the insurance proceeds. The attorney deposited the check into court and sought to enforce his attorney's lien under the Georgia statute.
 
 
 29
 The Georgia Court of Appeals affirmed the lower court's judgment in favor of GMAC, finding that no attorney's lien arose as to those funds belonging to GMAC. The court noted that the parties had effected a "pre-appropriation" of insurance proceeds and concluded that "[t]he interest of Bright as the principle insured was limited to his equity in the automobile, and the lien of his attorney could be no greater." This rule would seem to apply to the instant case, where the parties effected a "pre-appropriation" of the contract proceeds. The assignment transferred Sutton's interest in the proceeds to Integon and provided that "as the proceeds are collected from Buckeye Cellulose Corporation, they shall first be applied to reimburse Integon Indemnity Corporation for its payments...." Under Leiden, the lien of Sutton's attorney could not attach to the property of Integon. Cf. Law Office of Tony Center v. Baker, 185 Ga.App. 809, 366 S.E.2d 167 (1988) (Attorney's lien cannot attach to child support payments; attorney stands in no better position than his client). See also Woodward v. Lawson, 225 Ga. 261, 167 S.E.2d 660 (1969), U.S. cert. denied, 396 U.S. 889, 90 S.Ct. 175, 24 L.Ed.2d 163 (The attorney's lien statute is in derogation of the common law. Accordingly, the statute will not be construed so as to apply to any factual situation not strictly within its wording). We find no error in the district court's determination that Sec. 15-19-14 did not give Mr. McGriff priority to the interpleader fund.[3]
 
 
 30
 Appellant's next contention is that Integon has no standing to recover contract proceeds on behalf of the Small Business Administration ("SBA"). This argument arises out of the fact that the SBA has reimbursed Integon for ninety percent of its losses on the bonded projects and Integon is obligated to pay back SBA if Integon recoups any of those losses. We find no authority for the proposition that Integon loses standing to pursue its claim upon being reimbursed by the SBA. Any suggestion that this will allow Integon to obtain a double recovery is misplaced in light of Integon's obligation to repay the SBA for any "salvage proceeds." United States for the Use and Benefit of Balboa Insurance Co. v. Algernon Blair, Inc., 795 F.2d 404 (5th Cir.1986).
 
 
 31
 Appellant's final contention is that Integon is not entitled to recover attorney's fees for its participation in the interpleader action. This argument is without merit, however, in light of a provision in the General Indemnity Agreement providing that Sutton would indemnify Integon for expenses, including attorney's fees, incurred in recovering losses from Sutton and third parties. (R1-13). See City of Lawrenceville v. Heard, 194 Ga.App. 580, 391 S.E.2d 441 (1990) (Attorney's fees are recoverable when authorized by contract.)
 
 
 32
 III. Conclusion.
 
 
 33
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 The order dismissing Integon from the case originally did so "with prejudice." Upon subsequent application from Integon, however, the district judge amended the order to state that Integon was dismissed without prejudice. The court made clear that the order dismissing Integon was not intended to address the merits or the validity of the assignment from Sutton to Integon
 The record before us on appeal would seem to indicate that Integon was not given notice and an opportunity to respond before they were dismissed from the case.
 
 
 [2]
 The means chosen by the judge to measure the value of Sutton's services--cost plus ten percent--does not affect the determination that Sutton's right to recover was based in quantum meruit
 
 
 [3]
 None of the parties to the interpleader raised the issue of what effect, if any, the Georgia Commercial Code's provisions on secured transactions would have on this case. See O.C.G.A. Sec. 11-9-101 et seq. We therefore do not address the issue in detail except to note that the application of the Code would not change the result in this case because the Code gives a perfected security interest in collateral priority over an attorney's lien. See O.C.G.A. Sec. 11-9-310(1) ("Except as is expressly provided to the contrary elsewhere in this article ... a perfected security interest in collateral takes priority over each and all of the liens, claims, and rights described in Code Section 44-14-320, relating to the establishment of certain liens....") and O.C.G.A. Sec. 44-14-320 (liens of attorneys at law included)