In the Matter of Jimmy C. BROWN a/k/a Amber Creek Farm and Christy G. Brown, Debtors

Pinnacle Bank, N.A. f/k/a First National Bank in Elberton, Movant

v.

Jimmy C. Brown a/k/a Amber Creek Farm Christy G. Brown, Respondents.

No. 04–32128 RFH.

United States Bankruptcy Court, M.D. Georgia, Athens Division.

May 4, 2005.

Ron C. Bingham, II, Paul A. Rogers, Norcross, GA, for Movant.

Ernest V. Harris, Athens, GA, for Respondents.

Walter W. Kelley, Albany, GA, The Standing Chapter 12 Trustee.

### *MEMORANDUM OPINION*

ROBERT F. HERSHNER, Jr., Chief Bankruptcy Judge.

Pinnacle Bank, N.A. f/k/a First National Bank In Elberton, Movant, filed on April 5, 2005, a motion for relief from the automatic stay. Walter W. Kelley, Standing Chapter 12 Trustee, filed a response on April 15, 2005. Jimmy C. Brown a/k/a Amber Creek Farm and Christy G. Brown, Respondents, filed a response on April 18, 2005. Movant's motion came on for hearing on April 18, 2005. The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion.

Respondents executed a promissory note dated November 27, 2000, in favor of Movant. The principal amount of the obligation was $580,000. Respondents are to make quarterly payments of $19,354.53 over a term of fifteen years. The final payment is due on March 27, 2016. Respondents, to secure their obligation, executed in favor of Movant a deed to secure debt, a security agreement, and a financing statement.

Respondents own and operate a poultry farm. Respondents and Columbia Farms, Inc. entered into a Broiler Growing Agreement. Pursuant to the agreement, Columbia Farms places flocks of poultry on Respondents' farm. Respondents grow the poultry for eight weeks. Columbia Farms then picks up the poultry and pays Respondents in accordance with their agreement. The payment is called a production settlement. Columbia Farms, at all relevant times, owns the poultry. Movant has no security interest in the poultry.

Respondents and Movant executed a document entitled an Assignment which is dated February 15, 2002.[1] The Assignment authorizes and directs Columbia Farms to deduct $12,266.40 per flock from any and all production settlements owed to Respondents by Columbia Farms. The funds so deducted are to be jointly payable to Respondents and Movant. The Assignment provides in part:

> All parties hereto acknowledge that Columbia Farms will deduct the funds as set out herein above solely as an accommodation to [Respondents and Movant].
>
> . . .
>
> *Notice:* Columbia Farms has made no obligation, commitment, understanding or representation to extend the terms of the existing Breeder Contract Agree-

ment with [Respondents] beyond the existing flock or place any subsequent flocks on [Respondents'] farm.

Respondents filed a petition under Chapter 12 of the Bankruptcy Code on December 20, 2004. A hearing on confirmation of Respondent's proposed Chapter 12 plan is set for May 16, 2005. Respondents continue to operate their poultry business as debtors-in-possession.

After Respondents filed for bankruptcy relief Columbia Farms placed a flock of poultry on Respondents' farm. Columbia Farms is scheduled to pick up the flock on April 18, 2005. Columbia Farms is expected to issue a production settlement payment within the next week. Movant contends that it is entitled to $12,266.40 of the payment amount. Movant contends that the Assignment divested Respondents of their rights and interest in the $12,266.40. Movant contends that the $12,266.40 is not property of the bankruptcy estate and is not protected by the automatic stay of the Bankruptcy Code.

Respondents contend that they are entitled to the $12,266.40 and that the funds are needed to fund their Chapter 12 plan. Respondents contend the Assignment was merely an accommodation. Respondents' counsel will hold in trust the $12,266.40 pending order of the Court.

■ Federal law determines whether an interest is property of the bankruptcy estate. The nature and existence of the interest is determined by state law. *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1043 (11th Cir.2004).

■ Property subject to a valid assignment does not become property of the bankruptcy estate. *In re Flanders*, 45 B.R. 222, 224 (Bankr.M.D.Ga.1984).

---

1. The Assignment is a "generic form" provided by Columbia Farms.

■ An assignment is an absolute, unconditional, and complete transfer of all rights, title, and interest in property. An assignment results in total relinquishment of any control over the property. *Allianz Life Insurance Co. of North America v. Riedl*, 264 Ga. 395, 444 S.E.2d 736, 738 (1994).

■ "[An] assignment can be inferred from the totality of the circumstances...." *Forest Commodity Corp. v. Lone Star Industries, Inc.*, 255 Ga.App. 244, 564 S.E.2d 755, 758 (2002), *cert. denied.*

■ "Any language, however informal, will be sufficient to constitute a legal assignment, if it shows the intention of the owner of the right to transfer it instantly, so that it will be the property of the transferee." *First State Bank v. Hall Flooring Co.*, 103 Ga.App. 270, 118 S.E.2d 856, 857 (1961).

■ "An assignment is a contract and, in order to be valid, must possess the same requisites (parties, subject matter, mutual assent, consideration) as any other contract." *Bank of Cave Spring v. Gold Kist, Inc.*, 173 Ga.App. 679, 327 S.E.2d 800, 802 (1985).

In *First State Bank v. Hall Flooring Company*,[2] B subcontracted certain work to C. After the work was completed, B wrote a letter to X stating that B would make payment for C's work jointly payable to C and X. X later contended the letter was an assignment of the obligation that B owed to C.

The Georgia Court of Appeals disagreed and stated in part:

The sole question presented for decision is whether the letter from B to X, in which B agreed to make payment jointly to C and X (such arrangement being acceptable to C), was a legal assignment of C's chose in action.

118 S.E.2d at 857.

The court also stated:

The purported assignment in the present case did not show an intention to transfer the fund immediately since the payment was to be made jointly to the purported assignor and assignee without any distinction being shown as to their separate interest in such fund, and for such reason the paper could not constitute either an equitable or legal assignment and the judgment of the trial court so holding was not error.

118 S.E.2d at 858.

In *Piedmont Southern Life Insurance Co. v. Gunter*,[3] Gunter sought to recover medical expenses allegedly due under his health insurance policy. The doctor and hospital that provided the medical services sought to intervene contending that Gunter had assigned the insurance benefits to them. Gunter had signed a form which stated in part:

"Assignment of insurance benefits: I hereby authorize payment directly to the above named surgeon [or hospital] of the Group Surgical [or hospital] Benefits herein specified and otherwise payable to me but not to exceed the charge stated above [or the hospital's regular charges]. I understand I am financially responsible to the surgeon [or hospital] for charges not covered by this assignment."

132 S.E.2d at 531.

The Georgia Court of Appeals held that Gunter had not assigned the insurance benefits to the doctor and hospital. The court stated in part:

---

**2.** 103 Ga.App. 270, 118 S.E.2d 856 (1961).

**3.** 108 Ga.App. 236, 132 S.E.2d 527 (1963).

The [health insurance company] objected to the intervention at the trial on the ground that these writings gave the [doctor and hospital] no right upon which an intervention could be based. This objection was valid. Though the word "assignment" is used, the writings "disclosed no intention on the part of the plaintiff [Gunter] to sell or assign the indebtedness, and none on the part of the alleged assignee to purchase the same; and, hence, the evidence failed to show any legal or equitable assignment of the claim in controversy." Didschuneit & Sons v. Enochs Lumber & Mfg. Co., 42 Ga.App. 527, 156 S.E. 720; accord Burke v. Steel, 40 Ga. 217. " * * * A mere communication to the holder of the fund (the obligor), containing no words of present assignment and merely authorizing and directing him to pay to a third party, may properly bear the interpretation that it is a mere power of attorney to the obligor himself, empowering him to effectuate a transfer by his own subsequent act." 4 Corbin on Contracts 425, § 862.

132 S.E.2d at 531.

*See Erika, Inc. v. Blue Cross and Blue Shield of Alabama,* 496 F.Supp. 786, 789 (N.D.Ala.1980). (communication containing no words of a present assignment and merely authorizing and directing payment to a third party is not an assignment.)

 Turning to the case at bar, the Court is persuaded that the Assignment is merely an authorization directing Columbia Farms to deduct $12,266.40 from each production settlement. The body of the document does not contain words of a present assignment. The Assignment does not show an intention to transfer any right, title, or interest in the $12,266.40. The funds so deducted are to be jointly payable to Respondents and Movant. Re-spondents did not relinquish total control over the funds.

The Court is persuaded that Respondents did not assign to Movant the $12,666.40 and that the funds are property of the bankruptcy estate.

An order in accordance with this memorandum opinion shall be entered this date.